GEORGE SIMPSON, Respondent, v. ATLANTIC COAST SHIPPING COMPANY, INC., Appellant.

First Department, May 14, 1920.

Ships and shipping — injury to longshoreman — failure of shipowner to furnish proper derrick appliances — failure of employer of long-shoreman to furnish proper appliances — appeal — defense not urged at trial — when no remedy under Workmen's Compensation Law — damages — indemnity for injuries — maritime law.

Although a shipowner which maintained a derrick on the deck of a ship for use in loading and unloading cargoes was primarily bound to furnish a " backing strap " necessary for the proper fastening of a topping lift which supported the derrick boom, the employer of a longshoreman who engaged to load the ship as an independent contractor was not relieved from liability for injury to his employee caused by the failure of the ship-owner to furnish such backing strap, for under the circumstances the employer was bound to furnish some other safety device which would protect its employees.

The aforesaid duty to furnish safe appliances is one which cannot be delegated by the master who is liable for the negligence of employees in charge in putting the men to work without safe appliances.

The defendant cannot escape liability upon the ground that there were other appliances which could have been used by its foreman in the absence of a backing strap, as such contention was not made at the trial and no such defense was there urged, and especially is this so when there is no proof that the other appliances were part of a gearing furnished by the master for use as a backing strap but were in fact furnished for other purposes.

The defendant cannot maintain upon appeal that the plaintiff's remedy is under the Workmen's Compensation Law, where such question was first raised after the verdict of the jury, especially since there is no evidence that the contract of employment was made in this State, and the defend-ant was a foreign corporation working in a foreign State where the accident happened.

Where a longshoreman is employed by an independent contractor in loading a ship which is at dock in navigable waters and is injured by reason of the failure of the contractor to provide proper appliances, he is entitled to recover indemnity for his injury even if the rule of maritime law be held to govern the damages.

CLARKE, P. J., and PAGE, J., dissent.

APPEAL by the defendant, Atlantic Coast Shipping Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of April, 1919, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 15th day of April, 1919, denying defendant's motion for a new trial made upon the minutes.

*E. C. Sherwood* of counsel [*Amos H. Stephens*, attorney], for the appellant.

*Moses Feltenstein* of counsel [*Jacquin Frank* with him on the brief; *David M. Fink*, attorney], for the respondent.

SMITH, J.:

The plaintiff is a longshoreman. The defendant was loading and unloading vessels at Norfolk, Va., and employed the plaintiff upon this work. In the course of the business a derrick was used which was furnished by the shipowner. When the defendant's men were getting ready to load the ship it was found that the boom upon the derrick was required to be moved. The boom upon the derrick was a heavy one. This boom is held in place by what is called a topping lift, which, in this case, consisted of a wire cable fastened to the end of the boom and going from there to a pulley at the top of the mast and from thence down along the side of the mast to the deck of the ship. This was fastened at the bottom of the mast by being wound around some cleats and then wound around the mast itself. The exact nature of the fastening at the bottom of the mast is not material to the question raised here. In order to lower the boom it was necessary to loosen the hold at the bottom of the mast so as to give more length to the topping lift. In order that the weight of the boom should not be so great that the workmen who were raising and lowering the boom would lose control, it was customary to fasten the top-

ping lift to the deck of the ship by means of a backing strap, or stopper, as it was called. This it seems was in general use for this purpose and apparently was necessary for the safe handling of the derrick. This backing strap was supposed to be a part of the equipment of the derrick itself which is ordinarily furnished by the shipowner who owned the derrick. The defendant did not furnish the derrick and was not expected in the first instance to furnish the backing strap. When it became necessary to lower this boom the hatch boss who was immediately over the plaintiff started to look for a backing strap. He went around the ship and was unable to find one. He swears that he came back to the derrick and found that the next man in charge had started to lower the boom without the safety appliance of the backing strap and that he joined in and helped and that the plaintiff was one of the helpers. The boom, however, was too heavy for them to handle and got away from them and the topping lift, which was a steel cable, flew up and injured the plaintiff. The accident happened on May 15, 1918.

The claim of the plaintiff is that this defendant, as his employer, was bound to furnish him both a safe place to work and safe appliances with which his work could be done, and for the injury occasioned by the failure so to supply the plaintiff with safe appliances, this judgment was properly rendered.

The contention of the defendant is, *first*, that the defendant was not bound to furnish a backing strap, but that that was an appliance which should have been attached to the derrick and which the boatowner was to furnish; *second*, that the workmen had at hand other straps which could be used therefor and the failure of the hatch boss to use those other straps was the negligence of a co-employee; *third*, that the plaintiff's only remedy was under the Workmen's Compensation Law of this State, and, *fourth*, that the plaintiff's recovery was to be governed by the rules of maritime law, in which the measure of damage is claimed to have been different from that adopted by the court.

As to the *first* contention I think the shipowner was primarily bound to furnish this backing strap and the defendant had the right to rely upon the fact that that backing strap would be furnished for its use by the shipowner. This, however, does

not relieve the defendant from its liability to the plaintiff to furnish him safe appliances with which he may do the work which he is employed to do. When it was discovered that this backing strap was not there, the defendant could not put the plaintiff to work without appropriate appliances, merely because the shipowner had failed in its duty to furnish this backing strap. The defendant was bound to furnish some safety device which would protect the plaintiff in case the boom was too heavy for the men themselves to handle. The hatch boss did in fact look around for a backing strap. At one of the other hatches upon the boat a block and tackle were used as a safety device, but no backing strap was found and no other safety device was used. The plaintiff swears that the hatch boss himself directed him to take hold of this topping lift for the purpose of changing the boom without this safety device. The duty to furnish safe appliances is the duty of the master and is one that cannot be delegated. Whether the plaintiff was directed by the hatch boss himself or by the man in charge when the hatch boss was absent, the negligence of the man in authority at the time in directing him to assist in lowering this boom without the safety device was the negligence of the employer. If it were the employer's duty to furnish safe appliances it was his negligence in putting the men to work without those safe appliances.

*Second.* It is true that the defendant had at the dock some gearing which was used to fasten the load upon the basket at the end of the boom so that it could be taken over from the dock to the boat. Some of this gearing consisted of chains. It is argued upon this appeal that as these chains were furnished the negligence of the hatch boss in not procuring them and using them was the negligence of a fellow-servant and not the negligence of the master. The difficulty with this contention is, *first,* that this contention was not made at the Trial Term and no such defense was there urged. In the *second* place there is no proof that any chains which were a part of this gearing which were furnished by the master were capable of use as a backing strap. It might further be added that they were furnished for a particular purpose, that of fastening the load upon the basket which was swung around from the dock to the boat. They were not furnished for use as a back-

ing strap, but furnished for another purpose. The defendant cannot excuse itself for its negligence by claiming that its foreman should have used them for some purpose other than that for which they were in fact furnished.

*Third.* It was not contended at the trial that the plaintiff had any remedy under the Workmen's Compensation Law. This question was first raised after the verdict of the jury. It was not raised in the defendant's pleading. Moreover, the evidence does not show that this contract was made in New York, although the parties went from New York to Norfolk together. The defendant is a foreign corporation, doing business in a foreign State, where the accident happened, and there is nothing to show that the plaintiff has any remedy whatever under any compensation law of any State. No such defense, therefore, is available to the defendant in this case.

*Fourth.* The defendant claims that this accident, happening upon the boat, in navigable waters, although at the dock, is to be governed by the maritime law, and that the measure of damage as held by the United States courts under that law is different from the measure of damage in a common-law action. In *Scarff* v. *Metcalf* (107 N. Y. 211) the owners of a vessel were held liable for damages sustained by reason of the neglect of the master to furnish and render a seaman medical attendance and care. That action was brought in the State court and the plaintiff was allowed to recover full indemnity for the injury suffered. The injury thus suffered in loading the boat upon navigable waters would seem to present a case for the jurisdiction of the United States courts under the maritime law, as has been held in *Atlantic Transport Company* v. *Imbrovek* (234 U. S. 52); also in *Southern Pacific Co.* v. *Jensen* (244 id. 205). In the case of *Chelentis* v. *Luckenbach S. S. Co.* (247 U. S. 372) the Supreme Court of the United States has held that by the general maritime law the vessel owner is liable only for the maintenance, cure and wages of a seaman *injured in the service of his ship,* by the negligence of a member of the crew, and it was there held that the rules of the maritime law governed both the right of action and the measure of damages. The maritime law, section 9 of the Judiciary Act of 1789 (now Judicial Code, §§ 24, 256), gives

original cognizance of all civil causes of admiralty and maritime jurisdiction exclusively to the District Courts of the United States, saving to suitors, in all cases, the right of a common-law remedy where the common law is competent to give it. (See 1 U. S. Stat. at Large, 76, 77, § 9; U. S. R. S. § 563, subd. 8; Id. § 711, subd. 3; Judicial Code [36 U. S. Stat. at Large, 1091], § 24, subd. 3; Judicial Code [36 U. S. Stat. at Large, 1160, 1161], § 256, subd. 3. Since amd. by 40 U. S. Stat. at Large, 395, chap. 97, §§ 1, 2.)* It was further held in that case that this act gave only the right to the common-law remedy and that the right of recovery should be determined upon the principles of the maritime law. In 35 Cyc. 1200, it is stated that under the maritime law a seaman who receives an injury while in the service of the ship is entitled to medical care, nursing and attendance, and to a cure, so far as cure is possible, at the expense of the ship, and this is true, even though the cause of the injury can be attributed to the fault of no one and the negligence of the seaman himself will not defeat the right. At page 1244 it is also stated: "The liability of a vessel or her owner to a crew does not ordinarily include any compensation or allowance for the *resulting effects* of an injury received while in her service, *no fault tending to produce the injury being shown in the vessel, her appliances, equipment* or officers; but is limited to the expenses of the care, attendance and cure of the seaman. The vessel and her owner are, however, both by English and American law, liable *to an indemnity for injuries* received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." To this statement numerous cases are cited in the notes, including the case of *Scarff* v. *Metcalf* (107 N. Y. 211). It would seem, therefore, if this action were brought against the owner of the vessel and negligence on the part of such owner was shown in failing to supply the proper appliances, that the plaintiff would be entitled to "indemnity" for "resulting effects" and would not be limited to the costs of medical

---

* On May 17, 1920, the amendment of 1917 was declared unconstitutional. (*Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. ——.)— [REP.

treatment and cure.  It follows, where a longshoreman is employed by an independent contractor in the loading of a ship, that by reason of the failure of that contractor to provide proper appliances, he would be entitled to recover indemnity for resulting effects of his injury, even under the rule of maritime law if that be held to govern the rule of damages in this case.

The judgment and order should, therefore, be affirmed, with costs.

LAUGHLIN and MERRELL, JJ., concur; CLARKE, P. J., and PAGE, J., dissent.

Judgment and order affirmed, with costs.